## LUTHER BARNARD vs. ZEBADIAH GRAVES.

A warrant to collect taxes, issued by assessors to a collector, does not authorize him to collect a tax by distress, unless it is accompanied with a tax list; but it is not necessary that the tax list should be annexed to the warrant.

Though a warrant to a collector erroneously direct him, for want of goods or chattels, whereon to make distress, for the space of twelve days after demanding payment, (instead of fourteen days, as directed by the Rev. Sts. c. 8, § 11,) to take the body, &c., yet if the warrant be in other respects sufficient, this error therein will not vitiate it, so as to render illegal a distress made by virtue of it, if, in making the distress, the warrant be executed according to law.

Under the Rev. Sts. c. 8, § 8, a collector of taxes, who distrains goods, may post a notification of the sale thereof before the expiration of four days after the seizure.

The return made by a collector, on his warrant, of his doings in making a distress for taxes, is so far an official act, as to be *prima facie* evidence in his favor, on the trial of an action against him for making the distress: And a demand by him of payment of a tax, before he made distress for it, may be shown by his return.

In a collector's return of his doings on a distress for a tax, he stated that he distrained a horse on the 6th of April, and on the 7th of April posted up a notification, at the B. B. House in D., of said distress, and of his intention to sell said horse at public auction at said house on the 11th of April; that he kept the horse four days and more, and posted up said notification more than forty eight hours before the sale, and sold the horse, within seven days after the seizure, at public auction, at said B. B. House, pursuant to said notification: On the trial of an action brought against the collector for taking and selling the horse, the original notification was produced, which was dated April 8th, and stated that the sale would be on the 11th of April, at the house of T. S. S. in D. *Held*, that the variance between the return and the notification was immaterial; that the return must be taken to be true, until it should be impeached; and that, if impeached merely by showing facts which would equally well justify the collector, he might rely on such facts to sustain his justification.

A collector's notification of the sale of a horse, distrained for non-payment of a tax by the owner, need not mention the owner's name, nor describe the horse, nor state the amount of the tax.

When a collector of taxes is also a constable, his notification of a sale by him of personal property, distrained for non-payment of a tax, is not vitiated by his adding to his signature the word " constable," instead of collector.

THIS was an action of trover for a horse, and was tried in the court of common pleas, before *Wells*, C. J. At the trial, the only question was, whether the taking of the horse by the defendant, as collector of taxes for the town of Deerfield, for the year 1845, was legally justifiable. The defendant introduced the records of said town for that year, from which it appeared that the defendant, at the annual town meeting, held in March, was chosen constable and collector of taxes for the ensuing year, and was sworn in both capacities ; that assessors were also chosen at the same meeting, and sworn, who assessed a state, county and town tax, and committed the

tax list to the defendant, with a warrant under their hands, commanding him, (among other things,) in these words: " Levy and collect of the several persons named in the list herewith committed to you each one his respective proportion therein set down." The concluding part of this warrant was in these words : " And if any person shall refuse or neglect, upon demand by you made, to pay the sum he is assessed in the said list, you are to distrain the goods or chattels of such person to the value thereof, and the distress so taken to keep for the space of four days, at the cost and charge of the owner; and if he shall not pay the sum so assessed, within the said four days, then you are to sell openly, at public vendue, the distress so taken, for the payment thereof, with charges ; first giving forty eight hours' notice of such sale, by posting up advertisements thereof in some public place in said town, which said notice may be given either before or after the said four days shall have expired ; and the overplus arising by such sale, if any there be besides the sum assessed, and the necessary charges of taking and keeping the distress, you are immediately to restore to the owner, with an account in writing *of the sale and charges; and for want of goods or chattels to* be shown you, whereon to make distress, (besides tools or implements necessary for his trade or occupation, beasts of the plough necessary for the cultivation of his improved lands, arms, utensils for housekeeping, necessary for upholding life, bedding and apparel necessary for himself and family,) for the space of twelve days after demanding the payment of any sum so assessed, you are to take the body of such person so refusing or neglecting, and him commit to the common jail of the county aforesaid, there to remain until he pay the same or such part thereof as shall not be abated by the assessors of said town for the time being, or by the court of county commissioners for the county aforesaid."

The defendant's return on the foregoing warrant is copied in the margin.*

* Franklin ss. April 11th 1846. By virtue of this warrant, and the tax lists committed to me as collector of taxes in and for the town of Deerfield

The plaintiff objected to the validity of the said warrant, both in regard to its directions for the sale of property and arrest of the body of the plaintiff; but the judge overruled the objection.

The defendant relied on the said warrant, with a tax list for the year 1845, which was not annexed to the warrant, and on said return, as *prima facie* evidence of the facts therein stated, and for his justification of the alleged conversion of the plaintiff's horse; and the judge ruled accordingly.

The plaintiff then gave in evidence the following advertisement posted up by the defendant: " Sale at auction. Taken in distress for taxes, and will be sold at public auction, on Saturday, the eleventh day of April instant, at one of the clock in the afternoon, one valuable horse, unless said taxes shall be settled previous to the time appointed for said sale, at the house of T. S. Sargent, S. Deerfield.   Deerfield, April 8th 1846.   Zebadiah Graves, Constable."   The plaintiff contended that this advertisement was insufficient as a notice of

---

for the year of our Lord 1845, by the assessors of said town, having first demanded of Luther Barnard, of said Deerfield, whose name is borne on said .ist with a tax against him of the sum of five dollars and ninety one cents, the payment of said sum and tax, which the said Barnar l refused to pay; I' distrained one horse, the property of the said Barnard, for the payment of said tax, and all legal and necessary charges and expenses in consequence of said distress, on the 6th day of April 1846. And on the 7th day of the same April, I posted up a notification at the Bloody Brook House, a public place in said town, as the law directs, of the said distress, and of my intention to sell the said horse, distrained as aforesaid, at public auction at said house, on the 11th day of said April at one o'clock P. M. for the payment of said tax and keeping and. sale of the said horse, and legal charges of the same. The aforesaid demand of said tax was made 14 days before making the said distress. And I kept the said distress for the space of four days and more, and posted up said notification more than 48 hours before the sale of said horse, and sold the same within 7 days after the seizure, at public auction at said Bloody Brook. House, pursuant to said notification, to William Chapman, he being the highest bidder therefor. The said horse was sold as aforesaid for $70, and the result thereof is as follows: Horse sold, $70·00.  Tax, $5·91.  Travel in service, 4 miles, $0·16 ; keeping horse 5 days, $1·25 ; fees for taking, &c. $0·50; commissions, 4 per cent. of tax, $0·23, = $7·05.  Surplus money, $63·05; which I hold for the said Barnard when demanded.  Deerfield, April 11th 1846.                                                    Zebadiah Graves.

sale, and also that it so far contradicted and impeached the return aforesaid, as to destroy its effect, even if it were otherwise good *prima facie* evidence of the facts therein stated; but the judge ruled that, notwithstanding this, the defendant had made out a sufficient defence.   The defendant offered no further evidence, and the jury found a verdict for him.   The plaintiff alleged exceptions to the judge's rulings.

*Huntington,* for the plaintiff.   1.  The warrant was illegal, not being conformed to Rev. Sts. *c.* 7, § 33, which require that it "shall specify the duties of the collector, as required .by law."   Rev. Sts. *c.* 8, § 8, direct that "the collector shall keep the goods distrained for the space of four days, at the least, and shall within seven days after the seizure sell the same," &c.   This seems, in spirit and in terms, to require the keeping of the property four days, at least, before the expense of advertising is incurred.   (See *Sts.* 1785, *c.* 70, § 2, and 1791, *c.* 22, § 2, the provisions of which are changed by the revised statutes.)   But the warrant in question allowed the defendant to give the notice "either before or after the four days" should have expired; and his return shows that he posted up notice before the four days had expired, to wit, on the next day after the seizure.

The warrant also directed the defendant to seize the body within twelve days after demand; whereas the Rev. Sts. *c.* 8, § 11, do not permit such seizure until fourteen days after demand.

These objections apply to a state of facts alluded to, but which did not exist, in *King* v. *Whitcomb,* 1 Met. 328.   In that case, the property was kept four days before the notice was posted up; and the proceedings of the collector conformed to the directions of the law, and were not in conflict with his warrant.   In the case at bar, the warrant directed proceedings contrary to law, both as to sale and arrest, and presents the very question which was alluded to, but not decided, in *King* v. *Whitcomb.*

2.  The defendant cannot justify under a warrant without a tax list annexed.   Rev. Sts. *c.* 7, §§ 31 – 33.   In *St.* 1785,

*c.* 50, § 6, the form of the warrant was prescribed, and "the .ist herewith committed" was mentioned. The warrant is not a warrant, unless the list be annexed to it, any more than a mortgage, referring to a schedule not annexed, is a mortgage of the goods named in the schedule.

3. The defendant's return was not sufficient evidence in justification of his invasion of the plaintiff's property. In *Bruce* v. *Holden,* 21 Pick. 187, a field driver's return was held to be *prima facie* evidence, on the ground that it was an official act, required by the provisions of law. But a collector of taxes is not required by law to make a return; and his return, when made, is not an official act. Neither his oath nor his prescribed duties require him to make returns. See *St.* 1785, *c.* 50, § 6; *c.* 70, §§ 2, 17. Rev. Sts. *c.* 8, §§ 1 – 14. In *Alvord* v. *Collin,* 20 Pick. 428, the court say, "the employment of a collector cannot be deemed a public office." He "has a single duty to perform, viz. to collect the taxes committed to him." If he is obliged to return his doings as to one tax payer, he is as to every other tax payer in the list. See 1 Greenl. on Ev. § 498.

4. The return, if evidence for any purpose, was not evidence to prove either a demand or notice of the sale. The demand should have been proved *aliunde;* and the return, if it were to prove notice of the sale, should have set forth a copy of the notice, either in terms or substance, and the acts done, and not the inference of law. *Wellington* v. *Gale,* 13 Mass. 483. The effect of the return, as *prima facie* evidence, is impeached or impaired so far as to call for further testimony, (which was not offered,) by the variance between the statement in the return and the date of the notice on its face. The return states that the notice was posted up on the 7th of April; but the notice is dated April 8th. The return states that the sale was made at the Bloody Brook House ; but the notice itself mentions the house of T. S. Sargent.

5. The notice of sale was insufficient in many respects *First,* it was signed by the defendant, as "constable," though he was also chosen collector. So far as the plaintiff is

8 *

supposed to know the law, this signature as "constable" di-
rectly tended to mislead him ; for it implied that the defendant
had distrained the property of a person who had removed from
another town after a tax had been assessed upon him, under
the *St.* of 1842, *c.* 34. *Secondly*, the notice did not state the
name of the owner of the property distrained ; and therefore
the plaintiff was not informed of the proceedings. See
*Whitaker* v. *Sumner*, 7 Pick. 551.   *Alvord* v. *Collin*, 20
Pick. 421, 431. Rev. Sts. *c.* 8, §§ 22, 23, 25.   *Thirdly*,
there was no description of the property by which the owner,
or any other person, could recognize it, or judge of its value.
*Fourthly*, the amount of the tax was not mentioned.   The
defendant's return showed that the plaintiff's tax was only
\$5·91 ; and the defendant had no reason to suppose his
" valuable horse" could have been seized for so small a sum.
*Fifthly*, the notice is otherwise ambiguous ; for it does not
distinctly say whether the sale is to be " at the house of T.
S. Sargent," or whether the tax is to be paid there.

   *Grennell*, for the defendant. The first two objections to
the warrant are answered by the Rev. Sts. *c.* 7, § 33, which
provide that it " shall be *substantially* in the form heretofore
used," and " shall specify the duties of the collector, as pre-
scribed by law." The form heretofore used, and the duties
prescribed in case of distress and sale, are found in *Sts.* 1785,
*c.* 50, § 6, and *c.* 70, § 2, and in Rev. Sts. *c.* 8, § 8.   And
no requisition of the warrant in question is in conflict with
the provisions of those statutes. Certainly there is none
which made the warrant invalid. The warrant might well
have contained a direction to sell a distress within seven
days ; but this was not necessary. Taking all the directions
of the warrant together, they sufficiently conform to the pro-
visions of law.

   The direction to arrest the body within twelve days after
demand and non-payment was erroneous. The old form
under *St.* 1785, *c.* 70, § 2, was used too exactly. But this
misdirection could not vacate the whole instrument, nor ren-
der the defendant liable to an action for distraining property

under it. *King* v. *Whitcomb,* 1 Met. 328. *Sanford* v. *Nichols,* 13 Mass. 286.

The Rev. Sts. *c.* 8, § 8, bound the defendant, in the distress and sale, by three leading provisions. 1st. To keep the distress four days at least, at the expense of the owner. 2d. To sell within seven days. 3d. To give notice of the sale forty eight hours before the sale. It is not directed how soon after the seizure the notice shall be posted up. Nor is it declared or implied that four days shall elapse before the notice of sale shall be given.

Now, if the defendant's return is taken as evidence of his acts, no one can see wherein he departed from the precept of his warrant, or disobeyed the commands of the law. The supposed intent of the legislature that the tax payer should not be subjected to the expense of advertising, &c. till four days should have expired, is nowhere apparent. If such intent existed, it would have been easy to express it, for the guidance of collectors.

The law does not require that the tax list should be annexed to the warrant. The Rev. Sts. *c.* 8, §§ 1, 5, speak of a tax list and warrant committed to collectors, but nothing of their being annexed. In the present case, the two papers were under the hands of the same assessors; and the warrant, addressed to the collector, described the list as " herewith committed " to him — simply signifying that they went together into his hands.

The defendant's return or certificate of his doings is evidence in justification thereof. *Eastabrook* v. *Hapgood,* 10 Mass. 313. *Bean* v. *Parker,* 17 Mass. 601. *Bruce* v. *Holden,* 21 Pick. 187, 191. In *King* v. *Whitcomb,* 1 Met. 328, the court admitted a collector's return as evidence of the facts in that case, and spoke of it as proving important facts of which no other proof existed. It would seem necessary that an officer, vested with power, and intrusted with precepts to seize and distrain property, and commit persons to prison, should have the right to return facts for the knowledge of others interested, and for his own protection in his official capacity

especially as he is under solemn responsibilities.    The de-
fendant was sworn as collector and constable.

If the facts certified by a collector are not to be taken as
evidence, it follows that he must take witnesses along with
him, to witness a demand of payment made by him on half,
perhaps all, the persons assessed, and whose names are on his
tax bill, if he would protect himself in the matter of distrain-
ing property.    Who shall pay the witnesses, as such, not as
aids, taken about by the collector ?    This officer must prove
the time of making distress, at his peril.    If he sell a distress
after the seven days next following the seizure, he will be
liable as a trespasser.    *Pierce* v. *Benjamin*, 14 Pick. 356.
This proof as to time must be made *aliunde*, if a demand
must.

Collectors, for some purposes, are to make returns to select-
men.    Rev. Sts. c. 3, §§ 3, 4.    An officer's written return
proves an attachment, although the writ is never returned to
court.    *Wilder* v. *Holden*, 24 Pick. 8.

It is objected that the defendant's return, if evidence as
to some facts, is not full and particular enough as to the no-
tice of sale.    But the court will not hold a collector to stricter
rules, in selling goods distrained for taxes, than those by
which they hold an officer in returning a sale of goods seized
on execution.    See *Sprague* v. *Bailey*, 19 Pick. 440.

The variance between the return and the date of the noti-
fication cannot impeach the return.    The notification was
misdated, and the return will govern.    The time, in either,
would have been sufficient and legal.    The Bloody Brook
House, and the house of T. S. Sargent — a public hotel —
are well known to be the same.    See *Thayer* v. *Stearns*, 1
Pick. 109.

As to the alleged defective notice of sale, it is to be ob-
served that the defendant was chosen collector and constable,
and was sworn into both offices.    His " precinct " was the
town of Deerfield, the place of the plaintiff's residence.    Rev.
Sts. c. 15, § 33.

It is objected that the notice did not state the name of the

owner of the property seized. Is it a grievous wrong, that the defendant did not post his neighbor, at the tavern, for refusing to pay his tax? And was it necessary to describe the animal seized, as minutely as an impounded beast or stray horse should be described? In *Whitaker* v. *Sumner*, cited for the plaintiff, the officer's advertisement mentioned no " place of sale;" omitting what the *St.* of 1798, *c.* 77, § 4, in terms, required to be done, and what was most essential to be done.

Dewey, J.   Various objections are relied upon by the plaintiff, founded upon the irregularity of the proceedings under which the defendant justifies the taking and sale of the property, which is the subject in controversy.

I.   As to the objection that the warrant, without a tax list annexed, is no legal authority to collect taxes by distress. No one can doubt but that such tax list must accompany the warrant, must proceed from the same source, and be committed to the collector as a part of the documents constituting the authority for the collection of the taxes. But no precise form of annexation is prescribed, nor is there any requirement, that it be actually annexed, specified in any statute provision. Rev. Sts. *c.* 7, § 32, enact "that the assessors shall commit the tax list, with the warrant, under their hands, to the collector for collection." We think the evidence in this case sufficient to authorize a jury to find that the warrant and tax list were committed as the tax list and warrant for the collection of the tax which was collected, and that there is no ground for exception to any ruling of the court upon that point.

II.   As to the form of the warrant. The direction to arrest the body within twelve days after a demand of the tax, if the same should not be paid, although erroneous in form, is of no practical consequence here, as it was not acted upon. The case of *King* v. *Whitcomb*, 1 Met. 328, is an authority, that an omission to comply fully with the requisitions of Rev. Sts. *c.* 7, § 33, that the assessor's warrant shall specify the collector's duties as prescribed by law, will not vitiate a warrant

if sufficient in other respects, and executed in all respects in conformity to law.

As to the direction in the warrant, that notice of the sale might be given "either before or after four days shall have expired," we see no objection. We are of opinion that such notice may, under the existing laws, be legally given before the expiration of four days after the seizure, a proper time being fixed for such sale.

III.   The certificate or return of a collector of taxes is so far an official act, as to his doings upon a levy on personal property, that such certificate or return is to be deemed *prima facie* evidence, in his favor, of the facts stated therein.   He is a sworn officer, (Rev. Sts. *c.* 15, § 33,) and certainly in every respect as much entitled to be protected by his returns as a field driver, whose certificates are *prima facie* evidence as to all matters upon which they are required by law to make returns.   *Bruce* v. *Holden*, 21 Pick. 187.   Although this case of *Bruce* v. *Holden*, so far as it bears upon the question of the official duty of the field driver impounding beasts for being at large upon the highway, has been overruled, yet the general doctrine of the case, as to the effect of a return made by a field driver in cases where by law it is his duty to make such a return, is sound, and has not been doubted.

We have no doubt that in case of distraining the goods or arresting the body of the debtor, and a commitment to jail, for the non-payment of a tax, it is the duty of the collector to make an official return of his doings, and that, when properly made, he will be entitled to the benefit of the same, as *prima facie* evidence of the facts therein stated.

IV.   The demand of the tax may be shown by the return of the collector.

V.   The variance is not material between the return and the evidence introduced by the plaintiff to control it.   The return is to be taken to be true until impeached; and if impeached merely by showing facts which, if true, would equally well justify the defendant, the variance is immaterial, as the defendant may rely upon such facts as sustaining his

justification for taking and disposing of the property. Hence, whether the notice of the sale was posted up on the seventh or eighth of April is entirely immaterial. And so, also, as to any supposed variance in the notice actually given, and in the return of the officer, as to the place at which the sale was to be made, it does not seem to be material. It is enough that proper notice was given of the time and place of sale, be it in the one form or the other.

VI. The plaintiff insists that the notice of the sale, which was in fact posted up, and a copy of which he now introduces, was insufficient and defective in many particulars. 1. That it does not state the name of the person whose property was seized. This is not necessary. The seizure and removal of the property are supposed to give effectual notice of the distraining of it, so far as is necessary to the individual whose property is taken. 2. The property taken is not sufficiently described in the advertisement. This objection is not well taken. 3. It is objected that the amount of the tax is not stated in the advertisement. This is not necessary in the case of a distress of personal property for non-payment of taxes ; nor do we perceive any ambiguity as to the place of the sale sufficient to render the proceedings illegal on that account. 4. The notice of the sale, as appears from the copy now offered in evidence by the plaintiff, was signed by the name of Zebediah Graves, with the addition of " constable " annexed thereto ; and this is supposed to vitiate the notice. This objection is one certainly not as free from doubt as some of the others which have been raised. It seems to us, however, that all reasonable certainty as to the essential requisites of a notice is found in the recitals and signature, in the present case. The officer was both collector and constable. The terms of the advertisement in themselves clearly indicate that the seizure was by virtue of a warrant of distress for taxes, and that the proposed sale would take place only upon non-payment of the taxes. The name of the officer, borne upon the advertisement, pointed out the person who gave the notice, and the recitals apprised all concerned

that it was a seizure upon a warrant of distress for non-payment of taxes, and not a seizure on execution, nor a sale on an attachment upon mesne process.

Under these circumstances, the court are of opinion that the addition of the word " constable," as found in the advertisement, did not vitiate the notice, and that this ground of exception must also be overruled.

The result is, that all the exceptions are overruled, and that there must be

*Judgment on the verdict for the defendant.*